UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNION MUTUAL FIRE INSURANCE
COMPANY,

                Plaintiff,

      v.

STAND UP MRI OF BROOKLYN, P.C.;
STAND-UP MRI OF BRONX, P.C.;
STAND-UP MRI OF QUEENS, P.C.;
STAND-UP MRI OF EAST ELMHURST,
P.C.; STAND-UP MRI OF LYNBROOK,
P.C.; DAMADIAN MRI IN CANARSIE,
P.C.; STEPHEN HERSHOWITZ, MD;
HAROLD M. TICE, MD; and ROBERT
DIAMOND, MD,

                Defendants.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-6652 (RJD) (JRC)

RAYMOND J. DEARIE, United States District Judge:

      Plaintiff Union Mutual Fire Insurance Company alleges that defendants—several New-York-based radiology practices and three individual doctors associated with the practices—generated falsified MRI reports that caused plaintiff to pay for unnecessary medical treatments and defend allegedly sham lawsuits against its insureds. Defendants move to dismiss. For the reasons that follow, defendants' motion is granted in part and denied in part. Plaintiff's claims for unjust enrichment and for a declaratory judgment are dismissed in their entirety. Defendants' motion is otherwise denied.

## BACKGROUND

      The following facts are taken from plaintiff's complaint and are assumed true for the purpose of this order.

Defendants Stand Up MRI of Brooklyn, P.C., Stand-Up MRI of Bronx, P.C., Stand-Up MRI of Queens, P.C., Stand-Up MRI of East Elmhurst, P.C., Stand-Up MRI of Lynbrook, P.C., and Damadian MRI in Canarsie, P.C. are six related radiology practices based in New York. Compl. ¶¶ 4–9 (Dkt. #1).  Defendants Stephen Hershowitz, Harold M. Tice, and Robert Diamond are doctors each alleged to be an "owner, operator, officer, director, agent and/or employee" of the defendant practices.  *Id.* ¶¶ 11–13.  Plaintiff Union Mutual Fire Insurance Company is an insurance carrier that underwrites policies covering the claims and lawsuits brought by defendants' patients.  *Id.* ¶ 71.  Plaintiff Union Mutual Fire Insurance Company alleges that the defendants collectively engaged in a years-long scheme to defraud plaintiff via the creation and submission of fraudulent medical diagnoses.  *Id.* ¶ 15.

The scheme is alleged to work as follows.  Other medical providers would refer patients who had suffered injuries from accidents like slip-and-falls and motor vehicle collisions to the defendants.  *Id.* ¶ 17.  The defendants would conduct radiological diagnostics—including x-rays and MRIs.  *Id.* ¶ 18.  Defendants would falsify medical reports by "provid[ing] findings and impressions that did not exist and/or fail[ing] to report findings and impressions that would have medically established that such injuries were degenerative, chronic and not acute or casually connected to the alleged accident."  *Ibid.*  In exchange for these fraudulent reports, the referring doctors would continue to refer patients to defendants for treatment.  *Id.* ¶ 19.  Defendants would remit invoices for payment based on the testing and falsified medical reports, causing plaintiff to believe the testing to have been necessary and the claims for payment legitimate.  *Id.* ¶ 20.  None of the referring medical providers are named as parties to this suit.

The complaint describes eight specific fraudulent claims submitted by defendants, identified as Claimants A–H.  Claimant A was injured on February 3, 2021 in a slip-and-fall

2

accident. *Id.* ¶ 23. He was referred by his doctors to defendant Stand Up MRI of Brooklyn, P.C. *Id.* ¶ 24. He obtained two MRIs of his right shoulder and cervical spine: one on February 17, 2021, and one over a year later on March 22, 2022. *Id.* ¶¶ 24–25. After the first, Stand Up MRI of Brooklyn generated a report that found "a tear of the sublateral anterior-superior glenoid labrum in the right shoulder, a cervical disc herniation at C3-4 and lumbar disc herniation at L5-S1." *Id.* ¶ 24. After the second, Stand Up MRI of Brooklyn generated a report that found "a partial tear of the rotator cuff proximal supraspinatus tendon" and "cervical disc herniations at C2-3, C3-4, C4-5 and C5-6," but which "mentioned no evidence of a labrum tear." *Id.* ¶ 25. Plaintiff claims these reports were false and misleading based on an independent review by its own radiology expert that found "no evidence of either a labrum tear or a tendon tear" and "no cervical herniations at C2-3, C3-4, C4-5 or C5-6 or lumbar herniation at L5-S1," as well as "evidence of degenerative changes of the cervical discs and uncovertebral joints not definitively reported." *Id.* ¶ 26. The identity of the specific radiologist who made Stand Up MRI of Brooklyn's findings is not alleged in the complaint. Stand Up MRI of Brooklyn submitted the fraudulent reports to Claimant A's doctors, knowing they would be used for "unnecessary treatment" and to "engage in litigation." *Id.* ¶ 27. Plaintiff makes similar allegations regarding Claimants B–H and attaches as an exhibit to its complaint a list of fifty-one claims in total which it alleges were part of the fraudulent scheme. *See id.* ¶¶ 29–61, 71; *id.*, Ex. A (Dkt. #1-1).

Plaintiff alleges that the individual defendants—Hershowitz, Tice, and Diamond— "controlled and directed the medical services provided to patients by coordinating and providing radiological and imaging diagnostics and MRI reports, performed and authored by themselves and/or the Radiology Defendants identifying purported positive findings without correlation to degenerative conditions and providing inaccurate findings of the Claimants' conditions." *Id.* ¶ 66.

3

Plaintiff asserts that it has been damaged by defendants' scheme in two ways: by reimbursing medical providers for unnecessary treatment predicated on defendants' fraudulent reports, and by incurring costs for defending allegedly sham lawsuits against its insureds predicated on the reports. *Id.* ¶ 72.  Plaintiff alleges that it has incurred over $6 million in damages to date. *Ibid.*

Plaintiff brings claims for common law fraud and unjust enrichment. *See id.* ¶¶ 73–91.  In addition to actual and punitive damages, plaintiff seeks a declaratory judgment declaring that defendants sought fraudulent reimbursements and that plaintiff "is entitled to the return of payments made directly to the Defendants as a result of Defendants' unlawful conduct." *See id.* ¶¶ 93–96.  Defendants now move to dismiss the complaint in its entirety. *See* Defs.' Mem. of L. in Supp. of Mot. to Dismiss (Dkt. #33) ("Defs.' Mot.").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that

4

are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678–79.

## DISCUSSION

### I. Fraud Claim

Defendants move to dismiss plaintiff's common law fraud claim on the grounds that plaintiff has failed to plead the elements of fraud with particularity. *See* Defs.' Mot. 5–11. The motion is denied.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff," *Pauwels v. Deloitte LLP*, 83 F.4th 171, 189–90 (2d Cir. 2023) (citation omitted), or, in other words, "a representation of material fact, falsity, scienter, reliance, and injury," *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999). Claims for fraud are subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco*

5

*Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).

Defendants challenge the elements of scienter, reliance, and damages/causation. Defendants also argue that plaintiff impermissibly lumps all defendants together and that plaintiff may not rely on the allegedly fraudulent claims identified only in the appendix to plaintiff's complaint. Each argument is addressed in turn.

**A.     Scienter**

Defendants argue that plaintiff has failed to plead scienter. This argument fails.

While scienter "may be alleged generally," Fed. R. Civ. P. 9(b), the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (citation omitted). "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)) "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290–91 (citation omitted).

Plaintiff argues that the pattern of errors made across fifty-one separate medical reports were so stark and numerous that they could only be the product of intentional misrepresentation, rather than the product of mistake or ordinary disagreement of medical opinion. Plaintiff further alleges that defendants knew their reports were false and that they provided them to the referring doctors knowing they would be used to seek payments under plaintiff's policies and

6

reimbursements for unnecessary medical treatment. These allegations suffice at the pleading stage to state a "strong inference" of fraudulent intent that is cogent and at least as compelling as any opposing, innocuous inference. *See, e.g.*, *State Farm Mut. Auto. Ins. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 226–27, 238 (E.D.N.Y. 2008) (finding insurance fraud claim predicated on hundreds of medically unnecessary tests and false diagnoses by a single doctor over nearly a decade to plausibly allege strong inference of fraudulent intent); *Gov't Emps. Ins. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277 (ENV) (SMG), 2016 WL 11395017, at *4 (E.D.N.Y. Feb. 17, 2016) ("The volume of fraudulent claims, which generated more than $500,000 in payments over several years . . . is further evidence of defendants' fraudulent intent and lack of inadvertence or mistake."), *report and recommendation adopted*, 2016 WL 1071099 (E.D.N.Y. Mar. 18, 2016).

**B.     Reliance**

Defendants argue that the element of reliance has not been satisfied on two grounds, both unavailing. *First*, defendants argue that because the MRI films themselves were provided alongside the allegedly fraudulent reports, plaintiff could simply have consulted the films themselves and drawn their own medical conclusions. True, reliance is absent if "the misrepresentation allegedly relied upon was not a matter within the peculiar knowledge of the party against whom the fraud is asserted, and could have been discovered by the party allegedly defrauded through the exercise of due diligence." *Cohen v. Cerier*, 663 N.Y.S.2d 643, 644 (App. Div. 1997). But plaintiff is an insurance company, not an expert in radiology, and "insurance companies are permitted to rely on 'facially valid' insurance claim forms submitted for reimbursement." *Gov't Emps. Ins. v. Alrof, Inc.*, No. 11-CV-4028 (SLT) (RER), 2013 WL 9600668, at *4 (E.D.N.Y. July 19, 2013) (citation omitted), *report and recommendation adopted*, 2013 WL 5209415 (E.D.N.Y. Sept. 13, 2013). At least on the pleadings, plaintiff has plausibly

7

pleaded its reasonable reliance on the MRI reports, notwithstanding the fact that an expert eventually discovered the discrepancies.

*Second*, defendants argue that plaintiff impermissibly attempts to state a fraud claim via third-party reliance, arguing that defendants provided the allegedly fraudulent reports only to the referring doctors and the claimants, not directly to plaintiff. Under New York law, "a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment." *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 493 (N.Y. 2016). Where a third party relies on defendant's misrepresentations to the plaintiff's detriment, but "the misrepresentations were not communicated to, or relied on, by plaintiff" itself, no fraud claim can lie. *See ibid.* Importantly, however, a misrepresentation that is communicated indirectly to the plaintiff via a third party can support a fraud claim, "so long as the statement was made with the intent that it be communicated to the plaintiff and that the plaintiff rely on it." *Id.* at 492.

Contrary to defendants' characterization of the complaint, plaintiff alleged that the MRI reports were communicated directly from defendants to plaintiff. *See, e.g.*, Compl. ¶¶ 27, 67. Accepting these allegations as true, the Court finds that defendants' third-party reliance arguments are simply inapplicable. But even if the complaint had only pleaded that plaintiff received the reports through the claimants' doctors, defendants still would not be entitled to dismissal of the complaint as the complaint also plausibly alleges that defendants intended the reports to be passed on to and relied on by the plaintiff for insurance coverage purposes. *See, e.g., id.* at ¶¶ 27–28, 67–68.

### C. Damages and Causation

Defendants argue that plaintiff has failed to establish that it suffered any injuries caused by any alleged fraudulent conduct. This argument also fails.

8

"New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses." *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993). These damages must be "be the direct, immediate, and proximate result of the fraudulent misrepresentation." *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307 (2d Cir. 1986). Plaintiff's complaint sets out two ways in which it was injured by defendants' fraud: by paying for the reimbursements for unnecessary medical services, and by incurring costs in defending lawsuits against plaintiff's insureds.

Plaintiff sets out a plausible claim for damages under the first theory. Plaintiff alleges that if it did not have MRI reports from defendants stating that a particular claimant had suffered injuries occasioned by an accident covered under its policy, it would not have paid for what turned out to be medically unnecessary services. An insurance company's payments on claims for medically unnecessary services made in reliance on fraudulent misrepresentations contained in those claims form a well-accepted theory of injury. *See, e.g.*, *Liguori*, 589 F. Supp. 2d at 238; *Allstate Ins. v. Halima*, No. 06-CV-1316 (DLI) (SMG), 2009 WL 750199, at *2, 8 (E.D.N.Y. Mar. 19, 2009).

The second category—for costs incurred defending lawsuits against Plaintiff's insureds—is more complicated. Although ordinarily "legal expenses necessarily incurred in carrying on a lawsuit may not be recovered" as damages under New York law, there is an exception "where the damages are the proximate and natural consequence of defendants' tortious act which requires plaintiff to defend or to bring an action against a third party." *Cent. Tr. Co., Rochester v. Goldman*, 417 N.Y.S.2d 359, 361 (App. Div. 1979). Neither party adequately briefed the scope of this rule and whether it might apply here. On the Court's view, it is at least facially plausible that plaintiff's litigation expenses defending the third-party suits brought against its insureds occasioned by

9

defendants' fraudulent reports likely fall into this category, and thus, in the absence of briefing on the issue by defendants, the Court declines to rule out this category of damages at the motion-to-dismiss stage. *Cf. Dukes Bridge LLC v. Sec. Life of Denver Ins.*, No. 20-2687, 2021 WL 5986871, at *3 (2d Cir. Dec. 17, 2021) (upholding award of damages in the form of attorney's fees to insurance company who was fraudulently induced to issue an insurance policy by defendant and was then sued on that policy by a third party). Accordingly, plaintiff has adequately pleaded the elements of damages and causation.

### D. Group Pleading

Defendants object to plaintiff's complaint "lump[ing] together the Defendants" as an impermissible group pleading. Defs.' Mot. 2; *see* Reply Mem. in Supp. of Defs.' Mot. to Dismiss 4 (Dkt. #19-7). This argument fails. To the extent defendants argue that the complaint does not distinguish between the six corporate defendants, the objection is misplaced. Where "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). For each of the eight example claimants, the complaint specifies exactly which of the radiology practices treated the claimant and issued the fraudulent report. *See* Compl. ¶¶ 23–63. Defendants are thus adequately on notice of the specific misconduct attributed to each defendant practice.

While the complaint does not squarely attribute any specific misstatements to the individual defendants—Hershowitz, Tice, and Diamond—they may be held liable by virtue of their participation in the alleged scheme as corporate insiders. Under New York law, "[a] corporate officer may be held personally liable for a fraudulent act committed in his or her capacity as a corporate officer provided that the officer personally participated in the misrepresentation or

10

had actual knowledge of it." *Hutter v. PNC Bank, N.A.*, 64 N.Y.S.3d 691, 694 (App. Div. 2017); *accord Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) ("[O]fficers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it." (citation omitted)). As discussed above, because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind, it may use "general allegations as to a defendant's knowledge," using "facts or events" that give rise to an inference of such knowledge. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021); *see, e.g.*, *Cohen*, 25 F.3d at 1173–74 (applying this rule in the context of New York's corporate-officer doctrine).

The complaint adequately alleges that the individual defendants had actual knowledge of the fraudulent reports. As a general matter, it alleges that individual defendants "controlled" the defendant practices during the relevant period. Compl. ¶¶ 11–13. As a particular matter, the complaint states that all three individual defendants "coordinat[ed] and provid[ed] radiological and imaging diagnostics and MRI reports"—the ones which undergirded the allegedly fraudulent injury findings. *Id.* ¶ 66. The complaint also identifies a motive for the individual defendants to create the fraudulent complaints: so they "would continue to have patients referred to them." *Id.* ¶ 19. Given the individual physicians' sustained and personal involvement in the development of the diagnostic and MRI reports, plaintiffs have alleged sufficient facts "that [the individual] defendants more likely than not knew that" their companies provided inaccurate assessments of their clients' injuries. *Cohen*, 25 F.3d at 1174. Accordingly, plaintiff has adequately pleaded the facts and circumstances surrounding Hershowitz's, Tice's, and Diamond's involvement in the alleged fraud.

11

E.  **The Appendix Claims**

Finally, defendants argue that plaintiff's failure to provide any details regarding any of the claimants other than the eight examples provided in the complaint warrants dismissal of plaintiff's fraud claim to the extent predicated on those claims for lack of particularity. *See* Defs.' Mot. 5–6. But the complaint makes clear that its allegations regarding Claimants A–H are merely meant to serve as illustrative examples, and that a substantially similar story can be told regarding each of the fifty-one claimants identified in the attached appendix. *See* Compl. ¶¶ 22, 71. "The purpose of Rule 9(b) is to give defendants fair notice of the fraud alleged against them." *Liguori*, 589 F. Supp. 2d at 237. Plaintiff's eight specific examples of fraudulent claims plus its allegation that these claims are representative of the fifty-one total provide enough detailed allegations to put defendants on notice of the nature of the scheme they are alleged to have perpetrated. *See, e.g.*, *id.* at 237–38 (finding Rule 9(b) satisfied where plaintiff "list[ed] many specific claims" as representative examples of defendants' fraudulent billing practices); *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 516–17 (S.D.N.Y. 2016) (same, where plaintiff provided two example fraudulent invoices and alleged "that *all* of the invoices submitted by Defendants were fraudulent" in the same manner). Dismissal is therefore not warranted on this basis. In sum, defendant's motion to dismiss plaintiff's fraud claims against each defendant is denied.

II.  **Unjust Enrichment Claim**

Plaintiff's unjust enrichment claim is dismissed as duplicative of plaintiff's claim for fraud.

"The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (quotation marks and citation omitted). And while "[i]n a broad sense, this may be true in many cases . . . unjust enrichment is not a catchall cause of action

12

to be used when others fail." *Ibid.* Instead, it may be used "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Ibid.* "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Ibid.*

Here, plaintiff's unjust enrichment claim is duplicative because it is predicated on exactly the same factual allegations as its fraud claim. As with the claim for fraud, plaintiff's unjust enrichment claim alleges that it was induced to make payments to defendants based on the misrepresentations contained in defendants' fraudulent MRI reports. *See* Compl. ¶¶ 85–91. Plaintiff's argument that different damages may ultimately be recoverable under the two claims does not render the unjust enrichment claim nonduplicative for the simple reason that plaintiff admits that the damages available under an unjust enrichment claim would be a strict subset of those available under the fraud claim—success on the former would not grant plaintiff any additional relief it could not recover under the latter.

Nor can plaintiff save its claim for unjust enrichment by arguing that it is pleaded as an alternative theory of recovery. "A plaintiff may plead unjust enrichment in the alternative when a jury could find unjust enrichment on one view of the evidence, or a different theory of recovery on a different view of the facts—such as when a jury might find that a plaintiff was entitled to recover on a contract or, alternatively, that no contract existed but that defendant's retention of funds would be unjust." *Nachman v. Tesla, Inc.*, No. 22-CV-5976 (RPK) (ST), 2023 WL 6385772, at *6 (E.D.N.Y. Sept. 30, 2023). "But even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Ibid.* (quotation marks and citation

13

omitted). Because plaintiff has not explained how a reasonable jury could rule for plaintiff on unjust enrichment but not fraud, or vice versa, plaintiff's claim for unjust enrichment must be dismissed. *See, e.g.*, *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44–46 (S.D.N.Y. 2023) (dismissing plaintiffs' unjust enrichment claim as duplicative of their other claims, including for fraud, where all claims relied on the same underlying factual allegations); *Smith v. Adidas Am., Inc.*, 691 F. Supp. 3d 564, 585–86 (N.D.N.Y. 2023) (same); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 167–68 (S.D.N.Y. 2021) (same).

### III. Declaratory Judgment

Plaintiff's claim for a declaratory judgment is dismissed as duplicative.

The Declaratory Judgment Act "vests a district court with discretion to exercise jurisdiction over a declaratory action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins.*, 411 F.3d 384, 389 (2d Cir. 2005). In making this determination, the district court considers "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Ibid.* "Courts frequently find that a declaratory judgment will not serve a useful purpose when the claim is duplicative of another claim in the same action." *Tang Cap. Partners, LP. v. BRC Inc.*, 661 F. Supp. 3d 48, 77 (S.D.N.Y. 2023).

In its complaint, plaintiff sought a declaration that defendants were engaged in fraud and that plaintiff "is entitled to the return of payments made directly to the Defendants as a result of Defendants' unlawful conduct." Compl. 21. A declaration that defendants have engaged in fraud would clearly be duplicative of a judgment of liability on plaintiff's fraud claim. Likewise, a declaration that plaintiff is entitled to recovery of any reimbursement for services payments made

14

directly to defendants is entirely encompassed within and thus duplicative of the compensatory damages that would be available as relief if the fraud claim is successful.

In its opposition brief, plaintiff does not meaningfully defend its original declaratory judgment claim as pleaded. Instead, it argues that it would be entitled to a declaratory judgment that encompasses any future costs paid directly to defendants, "as well as charges to *other* providers and significant costs of defending lawsuits which were caused by Defendants' fraudulent reports." Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss 12 (Dkt. #19-5) (emphasis added); *see also id.* at 13 ("[Plaintiff] seeks damages not available in the fraud claim, namely, recovery (or recoupment) of defense costs in the event that claims referenced in this lawsuit continue to be prosecuted after this lawsuit has determined that such actions were based upon fraud."). Plaintiff never sought leave to amend its declaratory judgment claim to include declarations of non-liability as to these expanded categories of hypothetical, future costs. Of course, "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Milligan v. GEICO Gen. Ins.*, No. 20-3726, 2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) (citation omitted). Defendants were not offered a meaningful opportunity to address whether the expanded scope of relief requested in plaintiff's opposition brief would be non-duplicative or otherwise unavailable. The Court therefore declines at this juncture to consider the additional demands for relief raised for the first time in plaintiff's opposition brief, and the declaratory judgment claim is dismissed.

15

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims for unjust enrichment and for a declaratory judgment are dismissed. Defendants' motion is otherwise denied. If plaintiff wishes to amend its pleadings, it shall file a motion within thirty days of the issuance of this order seeking leave to amend with the proposed Amended Complaint attached as an exhibit. The motion should explain how the proposed Amended Complaint addresses the pleading defects identified in this opinion.

SO ORDERED.

        /s/ Raymond J. Dearie  
        RAYMOND J. DEARIE  
        United States District Judge

Dated: November 12, 2025  
      Brooklyn, New York